**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **KAY LAVETTE TAYLOR BUTLER,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:20-cv-1045-CWB** |
| ) | |
| **KILOLO KIJAKAZI,[1]** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.      Introduction and Administrative Proceedings**

Kay Lavette Taylor Butler ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on June 6, 2018—alleging disability onset of July 5, 2017 due to scoliosis, spinal stenosis, degenerative disc disease, bulging discs, depression, and pinched nerve in neck and lower back.  (Tr. 13, 64-65, 81-82, 275).[2]  Plaintiff's claims were denied at the initial level on September 19, 2018 (Tr. 13, 102), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 13, 109, 111).  The ALJ subsequently heard the case on February 20, 2020, at which time testimony was given by Plaintiff (Tr. 13, 34-53) and by a vocational expert (Tr. 53-55).  The ALJ took the matter under advisement and issued a written decision on March 17, 2020 that found Plaintiff not disabled.  (Tr. 13-27).  The ALJ's written decision contained the following enumerated findings:

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since July 5, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: scoliosis, spinal stenosis, neck, obesity, anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs. She is precluded from climbing ladders, ropes or scaffolds. She can occasionally balance, kneel, crouch and crawl. The claimant can perform simple routine repetitive tasks. She can make simple decisions and tolerate few workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 2, 1970 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 5, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15, 16, 18, 25-26).   On October 22, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-8), thereby rendering the ALJ's decision the final decision of the Commissioner.   *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.   (Doc. 1 at p. 2; Doc. 16 at p. 16).   The court construes Plaintiff's supporting brief (Doc. 16) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 17) as a competing motion for summary judgment.   As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 8, 9), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).   Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.   Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.   42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.")

(citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.     Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ erred by finding that Plaintiff did not meet or equal Listing 1.04A; and (2) whether the ALJ erred by not including in the RFC a limitation to interacting with others.  (Doc. 16 at p. 1).

### IV.     Discussion

#### A.     The ALJ's Evaluation of Listing 1.04A

##### 1.   Application of Legal Standards

At step three of the sequential evaluation process, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 16).  The ALJ stated that "[a]ll listings were analyzed" but that "[n]o listing was met or equaled when all of the claimant's severe impairments were considered, both individually and/or in combination." (Tr. 16).  The ALJ further stated that Plaintiff's "degenerative disc disease of the lumbar spine" was evaluated in accordance with Medical Listing 1.04, and the ALJ determined that "claimant's impairments are not characterized by nerve root compression accompanied by sensory or reflex loss, positive straight-leg raising tests, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effectively, and thus do not meet Medical Listing 1.04."  (Tr. 16, 390-401, 445-454, 485-498, 590-603, 610-612).

Plaintiff asserts, as an initial matter, that the ALJ's explanation at step three of the sequential evaluation process is unclear as to which subsection of Listing 1.04 was considered, as the ALJ's summary includes different elements from all three subsections of Listing 1.04, and that

spinal stenosis under Listing 1.04A does not require Plaintiff to provide evidence of the "inability to ambulate effectively" as the ALJ appears to require.  (Doc. 16 at p. 11).  Plaintiff also contends that the ALJ failed to apply the proper legal standards when evaluating her under Listing 1.04A.  (*Id*.).  Particularly, Plaintiff asserts that the ALJ evaluated her degenerative disc disease of the lumbar spine, although this impairment was not found to be severe or non-severe at step two, but neglected to evaluate her impairments of scoliosis and spinal stenosis, which were found to be severe.  (*Id*.).

An ALJ is not required to make detailed findings or explicitly discuss why a plaintiff did not actually meet a listing as long as substantial evidence supports the ALJ's conclusion that the plaintiff's impairment did not meet a listing.  *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841-42 (11th Cir. 2019) ("While the Listings in 'Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination.'") (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  Here, the ALJ generally found that Plaintiff did not meet or equal Listing 1.04.  The ALJ was not required to specify each subsection under Listing 1.04.  *See Kidd v. Colvin*, No. CV 115-207, 2017 WL 914061 at *5 (S.D. Ga. Feb. 2, 2017), *report and recommendation adopted sub nom. Kidd v. Berryhill*, No. CV 115-207, 2017 WL 901896 (S.D. Ga. Mar. 7, 2017) ("[T]he ALJ made an express, albeit concise, finding Plaintiff did not meet Listing 1.04; he was not required to cite the evidence he considered to make that determination nor must he specify each subsection within Listing 1.04."); *Bailey*, 782 F. App'x at 842 ("[T]he ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F.").

Listing 1.04 states:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04A-C. Because Listing 1.04 does not state a specific durational period, "the evidence must show that [the claimant's] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4); *Castro v. Astrue*, No. 808-CV-769, 2009 WL 1975513 at *4 (M.D. Fla. July 8, 2009).

The ALJ's summary of Listing 1.04 indicates that the ALJ considered and rejected each of the three alternatives, as the ALJ included references to "spinal arachnoiditis" and "lumbar spinal stenosis resulting in the inability to ambulate effectively," which are included respectively in subsections B and C.[5] Despite not asserting on her applications or at the hearing that she met or

---

[5] In her reply, Plaintiff erroneously argues, as contradicted by the version of Listing 1.04A-C that was in effect at the time of the ALJ's decision, that "the 'inability to ambulate effectively' ... is not

equaled Listing 1.04A, Plaintiff apparently assumes that the ALJ was summarizing the requirements of just Listing 1.04A instead of making a general rejection of Listing 1.04 as a whole.

As to Plaintiff's other assertions, Plaintiff alleged degenerative disc disease as one of the grounds for disability.  (Tr. 18, 64-65, 70-71, 81-82, 86-87, 275).  Given that the ALJ found several other impairments to be severe, the ALJ was not required to find whether Plaintiff's degenerative disc disease was severe.  When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps.  *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).  "To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant had 'at least one' severe impairment," and "[w]here an applicant has multiple impairments, the ALJ considers the combined effect of all impairments without regard to whether any individual impairment would demonstrate disability." *Id.* (citation omitted).  An ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Id.*  At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two.  *Id.*; 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2).  The ALJ's responsibility is met when the ALJ

---

required at any point in Listing 1.04" and that the "requirements recited by the ALJ are not the requirements of any subsection of Listing 1.04."  (Doc. 21 at pp. 3-4).  The court notes that courts in the past reached different conclusions on whether the prior version of Listing 1.04A required an inability to ambulate within the meaning of Listing 1.00B2b.  *See Cooper v. Comm'r of Soc. Sec.*, No. 618CV1352, 2019 WL 3097541 at *4 and n.5 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 618CV1352, 2019 WL 3082950 (M.D. Fla. July 15, 2019) ("Courts have reached different conclusions on this issue," but "it is unnecessary for the Court to reach the issue of whether Listing 1.04A requires an inability to ambulate within the meaning of Listing 1.00B2b because Claimant has not demonstrated that she meets all of the essential severity criteria for Listing 1.04A.") (colleting cases).

considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951-52; *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 747 (11th Cir. 2018) ("At step three, the ALJ noted that he considered whether Brock has an 'impairment or combination of impairments' that meets or equals the listings in 20 C.F.R. § 404, subpart P.  This is enough to show that the ALJ considered all of the relevant medical evidence."). *See also Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (noting that although the ALJ did not specify which impairments he considered and did not specifically discuss the evidence at step three, the ALJ provided a discussion of the plaintiff's severe and non-severe impairments, the objective medical evidence, and credibility directly after step three when he determined the plaintiff's RFC, and the court found that this discussion provided the necessary detail to review the ALJ's step three determination in a meaningful way and that it did not discount it simply because it appeared elsewhere in the decision); *Williamson v. Kijakazi*, No. 1:20-CV-728, 2022 WL 4126271 at *5 (M.D. Ala. Sept. 9, 2022) (although the ALJ did not discuss doctor's findings in his analysis of Listing 1.04, the court noted that the ALJ discussed this evidence elsewhere in the opinion, stating that a court must review the ALJ's decision as a whole in determining whether the decision was based on substantial evidence); *Verret v. Comm'r of Soc. Sec.*, No. 1:21-CV-93, 2022 WL 3096047 at *7 (S.D. Miss. July 19, 2022), *report and recommendation adopted*, No. 1:21CV93, 2022 WL 3082535 (S.D. Miss. Aug. 3, 2022) ("An ALJ's analysis and findings at other steps of the sequential process may provide a basis for upholding a conclusory step three finding.  An ALJ's discussion of a claimant's impairments and the medical evidence after step three may provide the necessary detail to review the step three finding in a meaningful way.").

Here, the ALJ considered Plaintiff's degenerative disc disease of the lumbar spine along with "all of the claimant's severe impairments."  (Tr. 16).  *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.  Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.").  The ALJ found that Plaintiff's <u>impairments</u> were not characterized by the various criteria in Listing 1.04.  Such a statement indicates that the ALJ considered the relevant evidence and found that the evidence did not support a finding that Plaintiff's multiple impairments meet or medically equal Listing 1.04.  *Williamson*, 2022 WL 4126271 at *4.  In addition, the ALJ's decision reflects that the ALJ considered all medically determinable impairments in assessing Plaintiff's RFC.  (Tr. 16-25).  The record makes apparent that the ALJ evaluated Plaintiff's various back impairments under Listing 1.04 for spine disorders.  Plaintiff does not dispute that scoliosis qualifies as a disorder of the spine, nor does Plaintiff cite to any other listing under which scoliosis would fall.  *Brenda R. v. Saul*, No. 1:18-CV-01623, 2020 WL 13573228 at *12 (N.D. Ga. Mar. 13, 2020) (noting lumbar spine degenerative disc disease and scoliosis as disorders of the spine under Listing 1.04).  Further, spinal stenosis is specifically mentioned as an example of a spinal disorder in Listing 1.04.  Accordingly, the court finds that the ALJ's conclusion under step three was supported by substantial evidence.

### 2. The ALJ's Step Three Determination Regarding Listing 1.04A

Plaintiff next contends that regardless of the ALJ's allegedly impermissible application of incorrect legal standards, she provided the ALJ with evidence proving that she meets or medically

equals Listing 1.04A.  (Doc. 16 at pp. 12-13).[6]  The Commissioner in turn contends that Plaintiff

failed to meet her burden of proving impairments that meet or equal all of the criteria for

Listing 1.04A—particularly that diagnostic studies did not establish that Plaintiff's spinal stenosis

resulted in compromise of a nerve root or the spinal cord, or that her impairments simultaneously

met or equaled all of the criteria in subsection A for any consecutive twelve-month period.

(Doc. 17 at pp. 5-7).   The Commissioner further maintains that the medical records

provided substantial evidence that Plaintiff's impairments did not meet or equal all the criteria in

subsection A of Listing 1.04.  (*Id*. at p. 7).  In her reply, Plaintiff argues that the Commissioner has

engaged in impermissible post hoc rationalization by providing multiple rationales not addressed

in the ALJ's ultimate conclusion.  (Doc. 21 at p. 2).  Plaintiff also asserts that the ALJ's implicit

finding that her impairments did not meet or equal Listing 1.04A was not supported by substantial

evidence.  (*Id*. at p. 3).

　　　　If at step two of the sequential evaluation process an ALJ finds that a claimant has an

impairment or combination of impairments that is "severe," then at step three the ALJ must

determine whether that impairment or combination of impairments meets or medically equals

the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the

duration requirement.  *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676

(11th Cir. 2015); 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii), 416.920(a)(4)(ii)-(iii).  A claimant bears

the burden of proving that his or her impairments meet or equal a listing.  *Barron v. Sullivan*,

924 F.2d 227, 229 (11th Cir. 1991).  "The burden to meet a listed impairment is heavy, but one the

plaintiff must bear in order to receive an automatic finding of disability under 20 C.F.R. §§

---

[6] Because Plaintiff solely challenges the ALJ's finding regarding subsection A, the court will limit
its discussion to whether Plaintiff's spine disorder met the requirements of Listing 1.04A.

404.1520(d), 416.920(d)." *Nettles v. Astrue*, No. 3:09-CV-862, 2010 WL 3394666 at *7 (M.D. Fla. Aug. 26, 2010). "The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim." *Nolen v. Colvin*, No. 6:14-CV-01306, 2015 WL 4617236 at *3 (N.D. Ala. July 31, 2015); *Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1215 (M.D. Fla. 2008).

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. § 404.1525(a)-(d); 20 C.F.R. § 404.1526(a). The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. A claimant who is not currently engaging in substantial gainful activity and who

has a severe impairment that meets or equals a listing is entitled to disability benefits, and the sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). "The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record. Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).

To meet Listing 1.04A, a plaintiff "must establish (1) evidence of nerve root compression characterized by neuroanatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) positive straight-leg raising test (sitting and supine)." *Butts v. Saul*, No. CV 20-00068, 2021 WL 1051119 at *13 (S.D. Ala. Mar. 19, 2021) (cleaned up and citation omitted). Further, the "'medical criteria must be met for a period of twelve continuous months.'" *Id*. (citation omitted). Plaintiff asserts that she presented evidence meeting the first criterion of Listing 1.04A, which showed that her spinal disorder resulted in "compromise of a nerve root (including the cauda equina) or the spinal cord" by the documented evidence of her cervical radiculopathy and cord compression. (Doc. 16 at pp. 12-13, citing Tr. 375, 393, 395, 398, 489, 519). The ALJ stated that Plaintiff was injured on the job in June 2017 and went to the emergency room for treatment and evaluation of back, neck, and arm pain, for which she received x-rays of the cervical spine that showed no fracture or subluxation and some degenerative disc changes with spondylotic spurring at C4-5, C5-6 and C6-7. (Tr. 19). The ALJ noted that an MRI from August 14, 2017 of the cervical spine showed small C3-4 and C4-5 disc protrusions with mild focal spinal stenosis and cord compression, mild C5-6 bony spinal stenosis, and moderate to severe

14

diffuse bony foraminal stenosis, most severe at C4-6.   (Tr. 19, 375).   The ALJ noted that on July 25, 2018 Plaintiff underwent a nerve conduction velocity ("NCV") study and electromyography ("EMG") for the right arm that showed right C6-7 radiculopathy and that nerve conduction studies of the lower extremities from July 18, 2018 revealed left L5-S1 radiculopathy. (Tr. 21, 519, 525).   The record also reflects that on October 6, 2017, Timothy Haley, M.D., examined Plaintiff and assessed her with cervical radiculopathy, that on December 5, 2017, Dr. Haley assessed her with degeneration of cervical intervertebral discs, low back pain, and cervical radiculopathy, and that on February 1, 2018, Dr. Haley assessed her with cervical radiculopathy and degeneration of cervical intervetebral disc.  (Tr. 393, 395, 489).

The Commissioner argues that x-rays of Plaintiff's cervical spine, thoracic spine, and lumbar spine did not reveal compromise of a nerve root or the spinal cord, nor did an MRI scan of Plaintiff's lumbar spine.  (Doc. 17 at pp. 5-6, citing Tr. 427-29, 442-44, 448-49, 547, 597).   The Commissioner asserts that Martin Jones, M.D., who reviewed the August 2017 cervical MRI scan in March 2018, did not mention cord compression, noted that the imaging showed no herniated disc, and indicated the other findings were mild.  (*Id.* at p. 6, citing Tr. 445).   The Commissioner thus contends that the diagnostic studies did not establish that Plaintiff's spinal stenosis resulted in compromise of a nerve root or the spinal cord as required by the introductory paragraph of Listing 1.04.  (*Id.*).

Although Plaintiff has a disorder of the spine (spinal stenosis), "'[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings.'"  *Nieves v. Comm'r of Soc. Sec.*, No. 8:21-CV-2273, 2023 WL 2596803 at *4 (M.D. Fla. Mar. 22, 2023) (quoting *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991)); 20 C.F.R. §§ 404.1525, 416.925, 404.1526 & 416.926.  Further,

while "[e]lectrodiagnostic procedures may be useful in establishing the clinical diagnosis," they "do not constitute alternative criteria to the requirements of 1.04." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00C3.   Plaintiff cites results of nerve conduction testing showing cervical radiculopathy[7] as evidence of a compressed nerve root.   (Doc. 16 at p. 12).   According to the regulations, "[n]erve root compression results in a specific neuro-anatomic distribution of symptoms and signs depending upon the nerve root(s) compromised." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00K1.   Nerve root compression characterized by neuro-anatomic distribution of pain "often manifests as pain that originates in one's back, but which is also felt down one or both legs." *Lennemann v. Saul*, No. 3:20-CV-5222, 2021 WL 5014154 at *10 (N.D. Fla. Aug. 9, 2021).   The record reflects that an August 2017 MRI showed cord compression, that Plaintiff sought treatment for back and neck pain, that Plaintiff was diagnosed with cervical and lumbar radiculopathy on several occasions, that tests revealed spinal stenosis, including considerable central spinal stenosis at L4-5, that Plaintiff was treated with epidural steroid injections, that Edward Crockett, M.D. assessed chronic neck pain, degeneration of cervical disc, chronic low back pain, cervical radiculitis, and spinal stenosis, and that David Arnold, M.D. reviewed imaging of her spine and noted diffuse disc disease in her neck with bulging, herniated disc, and stenosis and that the lower back had disc deterioration, bone deterioration, and scoliosis. (Tr. 19-21, 375, 393, 395, 398, 448, 468-69, 471, 489, 519, 525, 593, 595).

Courts have found that evidence of radiculopathy may be indicative of nerve root compression. *Hebert v. Kijakazi*, No. 8:21-CV-295, 2022 WL 4463593 at *8 (M.D. Fla.

---

[7] "Radiculopathy" is defined as "irritation of or injury to a spinal nerve root (as from being compressed) that typically causes pain, numbness, or muscle weakness in the part of the body which is supplied with nerves from that root: a pinched nerve of the cervical, thoracic, or lumbar region of the spinal column."   https://www.merriam-webster.com/dictionary/radiculopathy (last visited March 29, 2023).

Sept. 26, 2022); *Partipilo v. Berryhill*, No. 3:17CV549, 2018 WL 4518985 at *7 (N.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, No. 3:17CV549, 2018 WL 4518325 (N.D. Fla. Sept. 20, 2018) ("[T]he record contains diagnoses of lumbar radiculopathy, which can be evidence of nerve root compression."); *Patterson v. Saul*, No. 1:19-CV-206, 2020 WL 365569 at *4 (M.D. Ala. Jan. 22, 2020) (noting that some evidence of nerve root compression was present on the record given that plaintiff was diagnosed with both cervical and lumbar radiculopathy); *Smith v. Astrue*, No. 09-C-6210, 2011 WL 722539 at *11 (N.D. Ill. Feb. 22, 2011) (finding that "chronic radiculopathy" was "indicative of nerve root compression").  Here, however, even assuming that Plaintiff's diagnosis of radiculopathy is indicative of nerve root compression, Plaintiff's contention fails because she fails to establish <u>all</u> of the requirements of Listing 1.04A.

Plaintiff asserts that she met the additional requirements of Listing 1.04A by identifying evidence of neuroanatomic distribution of pain (Tr. 375, 393, 396, 401, 453, 485, 489, 498, 566, 571, 587), decreased range of motion of the cervical spine (Tr. 497, 531, 567, 594), motor loss (muscle weakness) (Tr. 471, 480) accompanied by sensory or reflex loss (Tr. 531), and positive straight-leg raising test (Tr. 567).  (Doc. 16 at p. 13).  The Commissioner contends that physical examinations did not reveal that Plaintiff consistently had neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, or positive straight-leg raising test—as she cited only a few instances where she displayed decreased range of motion in her spine or muscle weakness and only one instance when she displayed sensory loss and one instance when she displayed positive straight-leg raise test.  (Doc. 17 at pp. 6-7).  The Commissioner asserts that Plaintiff fails to mention the numerous times when doctors noted that she had normal range of motion in her cervical and lumbar spine, 5/5 strength in her upper and lower extremities, intact

sensation, 2+ reflexes, and negative straight-leg raise testing, or when they simply did not note the findings required of subsection A of Listing 1.04.  (*Id*. at p. 7, citing Tr. 392-93, 395, 397-98, 400, 420, 427, 434, 442, 445, 460, 463, 466, 471, 475-76, 479-80, 483-84, 488, 493, 497, 550, 567, 572, 580-81, 583-84, 593-95, 606, 611).  In her reply, Plaintiff neither disputes that she did not meet all the criteria simultaneously for at least twelve continuous months nor cites evidence from the record showing that she did.  (Doc. 21 at p. 5).  Instead, Plaintiff argues that she was not required to show that she met or equaled all the criteria of subsection A of Listing 1.04 at one time for twelve months.  (*Id*.).

The regulations recognize that "[m]usculoskeletal impairments frequently improve with time or respond to treatment" and that, "[t]herefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00H1.  *See Nettles*, 2010 WL 3394666 at *6 (citing Listing 1.00H1, the court recognized that showing that symptoms must last or be expected to last for a continuous period of twelve months was a particularly important requirement with Listing 1.04A).  The regulations also provide that "[b]ecause abnormal physical findings may be intermittent, <u>their presence over a period of time must be established</u> by a record of ongoing management and evaluation."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00D (emphasis added).  Thus, a plaintiff "must carry the burden by presenting evidence of a diagnosis of a condition covered by the Listings and a treatment history demonstrating that the durational requirements are met."  *Gaddison v. Saul*, No. 4:18-CV-0811, 2020 WL 374621 at *5 (N.D. Ala. Jan. 23, 2020) (citing *Wilson*, 284 F.3d at 1224).

The Commissioner's policy is that "in order to meet Listing 1.04A, the listing's criteria must be present simultaneously."  *Wesely L. v. Comm'r of Soc. Sec.*, No. C19-5472, 2019 WL

6112688 at *2 (W.D. Wash. Nov. 18, 2019) (citing SSAR 15-1(4), 2015 WL 5564523, 80 Fed.

Reg. 57,418, 57,420 (Sep. 23, 2015)).  The SSA has provided guidance regarding the assessment

of Listing 1.04A in the form of an Acquiescence Ruling issued in 2015.  *Monsoori v. Comm'r of*

*Soc. Sec.*, No. 1:17-CV-01161, 2019 WL 2361486 at *4 (W.D.N.Y. June 4, 2019).  Although an

Acquiescence Ruling does not carry the full force and effect of law, it "is an authoritative,

interpretive, and permissive construction of the Social Security Act that is entitled to deference."

*Martin v. Berryhill*, No. 5:15-CV-01677, 2017 WL 818849 at *10 (N.D. Ala. Mar. 2, 2017), *aff'd*

*sub nom. Martin v. Soc. Sec. Admin., Comm'r*, 903 F.3d 1154 (11th Cir. 2018).  In AR 15-1(4),

the SSA stated that "listing 1.04A specifies a level of severity that is only met when all of the

medical criteria listed in paragraph A are simultaneously present."   SSAR 15-1(4), 2015 WL

5564523, 80 FR 57,418-02 at *57420.  The ruling explains that

> when the listing criteria are scattered over time, wax and wane, or are present on
> one examination but absent on another, the individual's nerve root compression
> would not rise to the level of severity required by listing 1.04A.  An individual who
> shows only some of the criteria on examination presents a different, less severe
> clinical picture than someone with the full set of criteria present simultaneously.

*Id*.  Thus, the SSA policy

> requires that for a disorder of the spine to meet listing 1.04A at step three in the
> sequential evaluation process, the claimant must establish the simultaneous
> presence of all the medical criteria in paragraph A. Once this level of severity is
> established, the claimant must also show that this level of severity continued, or is
> expected to continue, for a continuous period of at least 12 months.

*Id*.; *Monsoori*, 2019 WL 2361486 at *4 (according the policy position set forth in AR 15-1(4)

substantial deference).

The ALJ stated that an August 2017 examination revealed that Plaintiff had fluid gait

without limp, that there was no tenderness in the cervical spine, that there was no crepitus or pain

elicited on motion, and that she had normal (5/5) strength in the neck and upper extremities, and

that an October 2017 examination by Dr. Haley showed that Plaintiff had full range of motion and strength in the neck, back, and upper and lower extremities.  (Tr. 19, 398, 400).  The ALJ noted that an examination in March 2018 showed that Plaintiff's motor strength in the upper extremities, including deltoid, triceps, biceps, wrist flexor, wrist extensor and intrinsics, were normal (5/5) and that sensation was intact.  (Tr. 20, 445).  The ALJ further noted that an examination in July 2018 revealed that Plaintiff had normal tone and muscle strength and normal movement of all extremities, that she had normal gait, and that her sensation and reflexes were intact.  (Tr. 21, 475-76).  Treatment records from SE Pain Management Center (Exhibit 10F) referenced by the ALJ (Tr. 16, 21) reflect that Plaintiff's July 31, 2018 examination showed 5/5 strength and sensation intact with negative straight leg raises bilaterally (Tr. 488).   The ALJ also stated that in September 2019 a consultative orthopedic examination showed that Plaintiff had decreased sensation in both hands, that her rip strength was 3/5 bilaterally, that she had tenderness in the lower back, and that her straight leg raising was positive at 30 degrees, but that she walked with a slow and steady gait, her range of motion in the upper extremities was normal, and she had good range of motion and movement in the lower extremities.  (Tr. 21, 593-95).

While Plaintiff has cited medical evidence that showed instances where various criteria under Listing 1.04A were met at a given time (Doc. 16 at p. 13, citing Tr. 375, 393, 396, 401, 453, 471, 480, 485, 489, 497-98, 531, 566-67, 571, 587, 594), the medical evidence as cited by the ALJ reflected that not all criteria were present simultaneously or met the durational requirement. For example, Plaintiff presented treatment notes from June 12, 2018 and July 31, 2018 showing muscle weakness through a decrease in her right-hand grip strength and right upper arm strength but no other criteria for Listing 1.04A.  (Tr. 471, 480).  However, in March 2018, Plaintiff's motor strength in the upper extremities was normal (5/5), and on July 11, 2018 she had normal tone and

muscle strength and her reflexes were DTRs 2+ bilaterally.  (Tr. 20-21, 445, 475-76).  Moreover, Plaintiff only cited one instance of sensory loss on June 27, 2018 (Tr. 531), but in March 2018 and on July 11, 2018 and July 31, 2018 her sensation was intact.  (Tr. 21, 445, 476, 488).  Further, Plaintiff shows only two instances of a positive straight leg raise—in July and September 2019. (Tr. 567, 594).[8]  Yet the examination in July 2019 also revealed other criteria lacking—"Sensation: no obvious gross deficits"—as did the examination in September 2019, which showed no atrophy of muscles, that reflexes were normal, and that the range of motion in her upper and lower extremities was good.  (Tr. 567, 593-94).

The evidence of positive straight leg testing also fails to satisfy the duration requirement. *See Raney v. Berryhill*, No. 1:17CV143, 2018 WL 1371512 at *10 (N.D. Fla. Feb. 13, 2018), *report and recommendation adopted*, No. 1:17CV143, 2018 WL 1371502 (N.D. Fla. Mar. 17, 2018) (evidence of positive straight leg testing did not satisfy the duration requirement where plaintiff cited positive straight leg raise testing only during examinations in August, October, November, and December of 2015 and January and February of 2016); *Nettles*, 2010 WL 3394666 at *6-7 (finding that substantial evidence supported the ALJ's conclusion that plaintiff did not simultaneously demonstrate all of the conditions for a continuous twelve-month period: "Although Plaintiff had various symptoms of Listing 1.04A since August 2005, he did not have a positive SLR test until March 20, 2007. Therefore, this was the earliest date at which Plaintiff could show he satisfied all of the requirements of Listing 1.04A."); *Duckson v. Soc. Sec. Admin., Com'r*, No. 2:13-CV-00374, 2015 WL 1487038 at *5 (N.D. Ala. Mar. 31, 2015) ("To meet Listing 1.04A, Duckson's medical records would have to show Duckson suffered from all of

---

[8] Plaintiff does not dispute in her brief that she was required to show proof of positive straight leg raises as a criterion under Listing 1.04A.

the symptoms included in the Listing simultaneously for a continuous twelve-month period."). Likewise, the evidence cited by the ALJ along with the evidence cited by Plaintiff regarding the other criteria under Listing 1.04A clearly reflects that Plaintiff failed to establish that the medical criteria were met simultaneously for a period of twelve continuous months. *See Nance v. Soc. Sec. Admin., Comm'r*, No. 4:17-CV-00378, 2018 WL 4184578 at *8 (N.D. Ala. Aug. 31, 2018), *aff'd*, 781 F. App'x 912 (11th Cir. 2019) ("[T]to the extent that Nance presented with some deficits in the listed categories, i.e., sensory and reflex loss, or loss of muscle strength, the medical record does not reflect that these symptoms persisted over time. ... Thus, Nance's medical records provide substantial evidence to support the ALJ's determination that Nance's back impairment does not meet or medically equal Listing 1.04A."); *Miller v. Astrue*, No. 2:09-CV-650, 2011 WL 1598731 at *6 (M.D. Fla. Apr. 28, 2011); *Patricia C. v. Saul*, No. 19-CV-00636, 2020 WL 4596757 at *17 n.15 (S.D. Cal. Aug. 11, 2020), *report and recommendation adopted sub nom. Craig v. Saul*, No. 19CV636, 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020) ("The Court also notes that although Plaintiff argues that all criteria for Listing 1.04(A) were present *at some time*, she does not argue that that each criterion was simultaneously present for at least 12 months.") (emphasis in original). *See also Kallenbach v. Berryhill*, No. C17-5127-MAT, 2017 WL 3454573 at *3 (W.D. Wash. Aug. 11, 2017), *aff'd*, 766 F. App'x 518, 520 (9th Cir. 2019) ("[T]o show a harmful step-three error, Plaintiff must show that he indeed satisfies Listing 1.04(a).  Thus, the Commissioner does not offer a post hoc rationalization in contending that Plaintiff may have identified places in the record that mention the symptoms described in Listing 1.04(a), but has not shown that they persisted for the requisite 12 months.  Accordingly, Plaintiff has not shown that the ALJ's purportedly erroneous lack of specificity in his step-three findings prejudiced him, because he has not shown that the record establishes that he met Listing 1.04(a).") (citation omitted); *Dugan v. Comm'r of Soc. Sec.*,

No. 2:17-CV-895, 2018 WL 4214389 at *6 (S.D. Ohio Sept. 5, 2018), *report and recommendation adopted*, No. 2:17-CV-895, 2018 WL 4761573 (S.D. Ohio Oct. 2, 2018) ("Plaintiff's reply argued only that the Commissioner may not now rely upon the durational requirement because the ALJ did not expressly rely upon it in denying benefits.  As it remains Plaintiff's burden to come forward with evidence that she meets all the Listing criteria, her inability to do so is fatal to her claim.") (citing *Zebley*, 493 U.S. at 530).

Additionally, the examinations do not reveal whether the straight leg raises were in both the sitting and supine positions.  To meet listing 1.04A, a plaintiff must demonstrate both.  *Cooper v. Comm'r of Soc. Sec.*, No. 618CV1352, 2019 WL 3097541 at *5 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 618CV1352, 2019 WL 3082950 (M.D. Fla. July 15, 2019); *Williamson*, 2022 WL 4126271 at *5 (noting that physician's records did not suggest that plaintiff had positive straight-leg raising while supine, the court found that "[t]his failure alone demonstrate[d] the ALJ's decision [was] based on substantial evidence"); *Hutchinson on behalf of Hutchinson v. Saul*, No. CV 20-334, 2022 WL 1716268 at *7 (M.D. La. Feb. 16, 2022), *report and recommendation adopted*, No. CV 20-00334, 2022 WL 822026 (M.D. La. Mar. 17, 2022) (noting that Listing 1.04A requires a positive straight leg raising test in both the seated and supine position and that plaintiff pointed to positive straight leg tests in the seated position only, the court concluded that "[w]ithout any evidence of a positive straight leg raising test in the supine position, any failure by the ALJ to discuss the reasoning behind the Step 3 decision is harmless"); *Nance*, 2018 WL 4184578 at *8 (noting that plaintiff's medical records did not indicate if failed straight leg tests were administered both sitting and supine as the regulations require); *Butts*, 2021 WL 1051119 at *14 ("[A]lthough Plaintiff points to multiple positive straight leg raising …, the test results do not specify whether the tests were conducted in

sitting or supine positions.  Listing 1.04A requires positive straight leg raising tests from both the supine and sitting positions."); *Michael Louis W. v. Kijakazi*, No. 20CV2277, 2022 WL 2701988 at *13 (S.D. Cal. July 12, 2022), *report and recommendation adopted*, No. 20CV2277, 2022 WL 2918613 (S.D. Cal. July 25, 2022) ("Plaintiff has not identified any medical evidence of positive straight-leg raising tests in both the sitting and supine positions, which alone is dispositive of Plaintiff's claim that he meets the criteria of Listing 1.04(A).").

In conclusion, the ALJ was correct to determine that Plaintiff's severe impairments, either singly or in combination, did not meet or medically equal a listed impairment.  While Plaintiff was able to demonstrate some of the criteria at various times, she was unable to show that she met all the criteria simultaneously for a continuous twelve-month period.  *See Nettles*, 2010 WL 3394666 at *7 ("Plaintiff's condition illustrates the difficulty proving musculoskeletal impairments because he demonstrated the individual requirements under Listing 1.04A, to some degree of severity, at various times since August 2005. However, there is substantial evidence to support the ALJ's conclusion that Plaintiff did not simultaneously demonstrate all of the conditions for a continuous twelve-month period.").  Plaintiff did not argue before the ALJ that she met Listing 1.04A, nor did any State agency doctor consider Listing 1.04.  (Tr. 72, 89).  *See Castro*, 2009 WL 1975513 at *5 (noting that plaintiff did not cite to medical evidence showing that the condition lasted for at least twelve months and that no doctor opined that the plaintiff met a listing or that she would be disabled for at least twelve months); *Raney*, 2018 WL 1371512 at *11 (stating that the ALJ was never presented with argument or citations to the medical record to support a finding that plaintiff's impairments met or equaled Listing 1.04A or any listing).  In any event, the ALJ discussed the medical evidence concerning Plaintiff's impairments in detail and thus fully considered all the medical evidence that might have shown Plaintiff's impairments met or equaled Listing 1.04A.

The ALJ was not required to make detailed findings or explicitly discuss why Plaintiff did not actually meet a listing as long as substantial evidence supported the ALJ's conclusion that Plaintiff's impairment did not meet a listing. *See Turberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled."); *Prince v. Comm'r of Soc. Sec.*, 551 F. App'x 967, 971 (11th Cir. 2014) ("To the extent Prince argues that the ALJ failed to make detailed findings or explicitly discuss whether her impairments met or equaled Listing 4.04C, this argument is meritless. The ALJ's conclusion that Prince did not meet that specific listing can be implied from the ALJ's discussion of Prince's medical evidence relating to her coronary artery disease and his general conclusion that Prince did not meet any medical listing."); *Robinson v. Kijakazi*, No. CV 20-00424, 2022 WL 944628 at *8 (S.D. Ala. Mar. 29, 2022) ("To the extent Plaintiff argues that the ALJ was required to provide a more fulsome analysis as to whether she meets or equals Listing 1.02, her claim is without merit. An ALJ is not required to 'mechanically recite the evidence leading to' his step three determination, and an ALJ's determination that a claimant's impairments do not meet listing criteria may be implied from the ALJ's decision. ... Although the ALJ did not explain the specific reasoning underlying this determination, he cited evidence elsewhere in his decision to support his conclusion that Plaintiff does not meet or equal Listing 1.02.") (citations and footnote omitted); *Butts*, 2021 WL 1051119 at *14 ("Although the ALJ did not explicitly reference Listing 1.04A in his decision, the undersigned concludes that the ALJ implicitly found that Plaintiff's impairments do not meet or medically equal Listing 1.04A.").

Based upon the record, Plaintiff failed to carry her heavy burden of showing that she met all the criteria in Listing 1.04A simultaneously for a continuous twelve-month period, and the ALJ's determination at step three was supported by substantial evidence.

### B.     The RFC Evaluation

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).

Plaintiff contends that the ALJ's finding of "paragraph B" criteria was inconsistent with the RFC determination, as the RFC did not include a limitation to interacting with others.

(Doc. 16 at p. 15).[9]  The Commissioner asserts that the ALJ's assessment of Plaintiff's RFC was supported by substantial evidence and that Plaintiff failed to prove that she required additional limitations.  (Doc. 17 at p. 9).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'"  *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ...] to conclude that [the ALJ] considered [the claimant's]

_____

[9] The ALJ rated Plaintiff as having moderate limitations in the functional areas of "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself," pursuant to the psychiatric review technique ("PRT") used in assessing mental impairments. (Tr. 17).  *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).  As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 17-18).  *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(b)-(d), 416.920(a)(4), 416.920a(b)-(d). "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).

medical condition as a whole.'") (citation omitted).   Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."   *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

At step three, the ALJ found that Plaintiff had a moderate limitation in interacting with others:

> The claimant reported she does not have the desire to socialize. She spends time with family and communicates with others on the phone, in person and on the computer on a daily basis. The claimant helps care for her grandchildren. She denied problems getting along with family, friends, neighbors and figures of authority. She shops in stores and sometimes goes to church (Exhibit 9E).

(Tr. 17).  With respect to determining Plaintiff's mental RFC, the ALJ found that Plaintiff could "perform simple routine repetitive tasks" and that she could "make simple decisions and tolerate few workplace changes."  (Tr. 18).

The record demonstrates that the ALJ considered the entire record in fashioning Plaintiff's mental RFC.  In assessing Plaintiff's RFC, the ALJ cited Plaintiff's function report in which she reported that she shopped in stores, spent time with family members daily and communicated with others by phone, and emailed on a daily basis.  (Tr. 18, 319-20).  The ALJ noted that Plaintiff reported that she did not have the desire to engage in social activities due to pain.  (Tr. 18, 320-21).  The ALJ stated that at a June 2018 mental status examination Randall Jordan, Psy. D. found that Plaintiff's affect was stable, that her mood was pleasant, and that socially she functioned in an open and friendly manner.  (Tr. 20, 455-56).  The ALJ explained that "[t]he limitation to simple routine tasks with simple decisions and few workplace changes accommodate [Plaintiff's] moderate limitation in interacting with others."  (Tr. 22-23, 23-24).

Plaintiff asserts that her function report revealed that she does not shop without the companionship of another person, that she either hovers around or uses a cart to hold herself up, and that while she attends church when not in pain, she only goes once every six months. (Doc. 21 at pp. 6-7, Tr. 320).  Plaintiff argues that her interaction "with others" is based upon the time she spends with familiar persons—not the general public.  (*Id*. at p. 7).  The function report indicated, as noted by the ALJ, that Plaintiff's requiring a companion to go shopping, her leaning on her shopping cart, her not attending church regularly, and her not wanting to socialize are because of her pain and not due a mental condition.  (Tr. 18, 319-21).  The ALJ also noted that Plaintiff reported in addition to getting along with family, friends, neighbors, and others, she also got along with authority figures.  (Tr. 17, 320-21).  Plaintiff does not cite to any evidence that she had difficulty interacting with providers or anyone else.  Accordingly, based upon the record, the court finds that the ALJ's RFC determination is supported by substantial evidence.

Moreover, even if the ALJ erred by not including a limitation with regard to the interaction with others, such an error would be harmless.  The Dictionary of Occupational Titles ("DOT") entries for two of the jobs identified by the VE—bench assembler, DICOT 706.687-010, 1991 WL 679074 and laundry folder, DICOT 369.687-018, 1991 WL 673072—do not involve any significant interaction with others: "People: 8 - Taking Instructions-Helping--Not Significant"; and the third job, office helper, DICOT 239.567-010, 1991 WL 672232, also does not involve any significant interaction with others: "People: 6 - Speaking-Signaling—Not Significant."[10]  *See*

---

[10] "[T]he DOT's job descriptions identify the highest functions in each occupation concerning a worker's need to interact with 'Data, People, and Things.'  For interacting with people, the DOT uses an eight-level list with 'mentoring' being the highest functional classification and 'taking instructions-helping' being the lowest."  *Reyes v. Comm'r of Soc. Sec.*, No. 219CV866, 2021 WL 9639040 at *8 (M.D. Fla. Feb. 16, 2021), *report and recommendation adopted sub nom. Reyes v. Comm'r of Soc. Sec.*, No. 2:19-CV-866, 2021 WL 1085618 (M.D. Fla. Mar. 22, 2021) (citing

*Keens v. Kijakazi*, No. 4:20-CV-2135, 2022 WL 635540 at *10 (M.D. Pa. Feb. 8, 2022), *report and recommendation adopted*, No. 4:20-CV-02135, 2022 WL 626771 (M.D. Pa. Mar. 3, 2022) ("[C]ourts have found that occupations with a "people" code of 8 can be performed by an individual who has "moderate" difficulty interacting with co-workers and the public.") (citing *Sweeney v. Colvin*, No. 3:13-CV-2233, 2014 WL 4294507 at *17-18 (M.D. Pa. Aug. 28, 2014) (collecting cases)); *Hall v. Astrue*, No. 1:09 CV 2514, 2010 WL 5621291 at *14 (N.D. Ohio Dec. 23, 2010), *report and recommendation adopted sub nom. Hall v. Comm'r of Soc. Sec.*, No. 09 CV 2514, 2011 WL 194615 (N.D. Ohio Jan. 20, 2011) (office helper position has been found to be appropriate position for persons who require limited interactions with others); *Kane v. Saul*, No. 3:18CV746, 2019 WL 7562760 at *15 (E.D. Va. Aug. 20, 2019*), report and recommendation adopted*, No. 3:18-CV-746, 2020 WL 130134 (E.D. Va. Jan. 10, 2020) ("Jobs that rank the interaction-with-others function as 'not significant' adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors.") (collecting cases); *Robinson v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00070, 2022 WL 9833906, at *9 (D. Ariz. Oct. 17, 2022) (noting that office helper position requires only sporadic interaction with others).

## V.   Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 16) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 17) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

---

DICOT Appendix B (Explanation of Data, People, and Things), 1991 WL 688701 (4th ed. rev'd 1991)).

A separate judgment will issue.

**DONE** this the 6th day of September 2023.

_____

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**